CHARLES H. STEFFEY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 41290, 42266. Promulgated June 30, 1931.

*Walter C. Mylander, Esq., Elmer L. Hatter, C. P. A.,* and *Louis C. Schulte, C. P. A.,* for the petitioner.

*B. M. Coon, Esq.,* for the respondent.

914

OPINION.

MORRIS: The question here presented is whether the petitioner is taxable during the years in controversy upon alleged profits derived from the sale of lots in the Anneslie development.

The respondent contends that the agreement of July 31, 1922, created a copartnership between the petitioner and the other contracting parties, and that under the law the profits derived therefrom were taxable to the individual members thereof in the year or years in which earned, whether actually distributed or not. The petitioner contends, on the other hand, that it is not taxable on the amounts in question, because there is nothing due it under the agreement until certain conditions, therein laid out, are complied with; that until then no partnership existed; and that from the time of the oral agreement in March, 1922, it was a mere agent for the " syndicate."

The petitioner, it appears, was a specialist in the handling of real estate developments and it had an opportunity, which it thought well of, to acquire the Anneslie acreage, then about to be platted into 1,050 lots for future sale, and it, through its president, placed the matter before Maloy, Brady, Coblentz and Beasman, who, in or some time prior to March, 1922, orally agreed to furnish the necessary capital for the acquisition of the property, provided it would do the necessary developmental work, which agreement was finally reduced to writing on July 31, 1922. In the meantime, that is, on May 23, 1922, the property had been deeded to the petitioner, in fee simple, for $100,000, payable $5,000 cash and the balance of $95,000 by a noninterest-bearing purchase-money mortgage upon the property. By the written agreement of July 31, 1922, the parties agreed that " they would together develop said tract of land," and, furthermore,

that the said instrument or agreement was " intended to be an agreement of equal copartnership in the development, sale and division of profits and losses arising in, from, or out of the development of said land." That agreement, after providing for the retention of 5 per cent of all collections made by the petitioner, as compensation for such services, provided for the payment of developmental expenses, mortgage indebtednesses and borrowed money owing to the parties to the agreement, the interest upon which was specifically waived by the said parties, after which, that is after the payment and satisfaction of those obligations, " and not before," all funds received were to be distributed, 47 per cent to the petitioner, " absolutely," and an equal amount to the other contracting parties, and finally, after the satisfaction of all mortgage indebtednesses and borrowed money " (with interest)" and other debts, " then thereafter " the petitioner to hold one-half of the unsold or forfeited lots and unexpired contracts and moneys, in trust, for the other contracting parties, subject to their right to request a transfer of said one-half interest, and the petitioner to retain the remaining one-half interest as its own.

We can not agree with the petitioner that the copartnership status was *in futuro* and that it did not exist during the taxable years in question. Even granting that the parties to the agreement have never received any distribution of profits thereunder does not alter the fact that a copartnership was intended to result instantly and, in fact, did so result, nor does that fact necessarily prove that no profits were earned within the meaning of the taxing statute. Indeed it is entirely possible, and even probable, that ultimate losses may prevent there ever being a distribution. In other words, the mere fact that personal enjoyment of the fruits of the venture was postponed until all expenses and obligations were met, including the paying off of the purchase price of the property, does not postpone the contractual relationship of the parties to the agreement. The element of delay between the time a venture begins and ultimate division of profits or losses is ever present, varying in length, of course, according to the economic exigencies with which a business may be confronted. The profits or losses of the individual parties to a partnership agreement, however, accrue from year to year as the conduct of the venture progresses, notwithstanding they may deem it unwise to make a physical division thereof until the happening of certain specified events.

Counsel for the petitioner refers to the fact that the petitioner would be ultimately rewarded for the work which it rendered (in the performance of the conditions precedent to the partnership status) with " an undivided half interest in that *property*." Such an interpretation is entirely too restricted. The agreement, as we

have already pointed out, provided for the disbursement of funds, after the payment of all expenses, etc., which, in fact, was a provision for the distribution of profits from the venture. Had the venture proved successful from the start, enabling the payment of all obligations, distributions would have been immediately forthcoming. The clause in the agreement providing for the undivided one-half interest in the property itself was merely a residuary clause, so to speak, by which the rights of the parties could be determined upon conclusion of the venture or undertaking.

Therefore, since the parties have expressly provided that the arrangement was one of " equal co-partnership," not only in ultimate " profits " arising from, but " in the development," which covers every phase of the venture, and since it appears that all of the essential elements of a copartnership are present and have been clearly provided for, and, furthermore, since the language used is in the present tense and is in no sense conditional or equivocal, we hold that a copartnership existed and has continued throughout the years in question.

Even granting, for the sake of discussion, that there was an intention to postpone the partnership status until some future time when all of the conditions of the agreement had been complied with, and that the agreement as now worded does not set forth the true intention of the parties, we certainly could not vary its positive and unmistakable terms without more proof than has been presented. It seems to us, if a different construction was intended from that which we are forced to place upon the language used, that the other contracting parties, that is, Maloy, Brady, Coblentz and Beasman, should have been present at the hearing in order to have given us the benefit of their unbiased views of what the true intention of the parties was. They were neither present at the hearing nor accounted for.

The petitioner's counsel devoted considerable time and attention toward proving the manner in which the petitioner's books of account were kept, that is, whether upon the accrual or the cash receipts and disbursement basis, and feeling as we do that it has some characteristics common to both bases, as is true in a great many instances, we have found as a fact that the method employed more nearly resembles the cash basis of accounting. However, since we have concluded that the agreement in question created a copartnership, its basis of accounting becomes immaterial for the reason that section 218 of the Revenue Act of 1921, in so far as applicable, provides:

(a) * * * There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership * * *.

The petitioner concedes that the costs prorated to lots, the receipts as determined, and the computation of the tax are correct.

*Decision will be entered for the respondent.*